<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| B.A.,<br><br>      *Plaintiff*,<br><br>v.<br><br>JANET GOLABEK, PARSIPPANY HIGH SCHOOL, PARSIPPANY-TROY HILLS SCHOOL DISTRICT, PARSIPPANY-TROY HILLS SCHOOL BOARD, JOHN DOES 1-20 (fictitious names) ABC CORPORATIONS 1-20 (fictitious names),<br><br>      *Defendants*. | Civil No.: 18-cv-17523 (KSH) (CLW)<br><br><br><br>**<u>OPINION</u>** |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

**I.     Introduction**

Relying on recent amendments to the Child Sexual Abuse Act, N.J.S.A. 2A:61B-1 (the "CSAA"), which greatly expanded the state's statute of limitations for civil claims of child sexual abuse, plaintiff B.A. has filed this lawsuit on grounds that Janet Golabek, his former high school art teacher, sexually abused him approximately 40 years ago.  He has sued Golabek and co-defendants Parsippany High School, the Parsippany-Troy Hills School District, and the Parsippany-Troy Hills School Board (the "Parsippany defendants"), seeking damages against them for the alleged abuse.

Before the Court is defendants' motion to dismiss the complaint under Rule 12(b)(6) (D.E. 62), arguing that B.A.'s claims are untimely, and that the complaint should be dismissed for failing to allege any unlawful conduct.  For the reasons that follow, defendants' motion is denied.

**II.    Background**

      **A. Factual Background**

1

The facts are gleaned from the complaint. (D.E. 1.) B.A. was a student at Parsippany High School from 1974 to 1978. (*Id.* ¶¶ 1-2.) During that time, Golabek was employed as an art teacher at the high school. (*Id.* ¶ 4.)

When B.A. was a 15-year-old high school sophomore, he was a student in Golabek's art class. (*Id.*) Although B.A. and Golabek initially engaged in a traditional student-teacher relationship, Golabek eventually began "flirting" with him. (*Id.* ¶ 5.) For example, she would "have B.A. miss the last school bus" so that she could drive him home from the high school. (*Id.* ¶ 7.) During those car rides, which "became very long in duration," Golabek would flirt with and "groom" B.A. (*Id.*)

During the summer between B.A.'s sophomore and junior years, when school was not in session, Golabek continued to communicate with B.A. (*Id.* ¶ 8.) It was then that Golabek and B.A., who had turned 16, began engaging in sexual intercourse. (*Id.* ¶ 9.) Their sexual encounters occurred in a number of locations, including at the high school and in B.A.'s family home. (*Id.* ¶ 10.)

The sexual relationship continued through B.A.'s junior year up until the summer before his senior year, at which point Golabek ended it. (*Id.* ¶¶ 10, 13.) According to the complaint, B.A., "[d]istraught over the situation, . . . cut his wrists," and "was transferred to the Morristown Memorial Hospital and received care and follow-up treatment." (*Id.* ¶ 14.) At some point during the relationship Golabek became pregnant and had an abortion, which "was confusing and to a certain extent devastating for B.A., who, as a teenager did not fully understand or comprehend the implications of this." (*Id.* ¶ 11.)

B.A. suffered negative consequences as a result of the relationship, including the abandonment of his career as an artist and his engagement in "dysfunctional" relationships with women. (*See id.* ¶¶ 15-19.) In the decades that followed, he was treated by mental health professionals for depression and anxiety and prescribed anti-anxiety medications. (*Id.* ¶¶ 18, 20.) However, it was not until he began seeing a physician by the name of Dr. Del Vecchio in October of 2018 that B.A. was told he was a

"victim of sexual abuse" and that he "sustained significant physical and emotional damages" as a result of his and Golabek's relationship. (*Id.* ¶ 21.)

### B. Procedural History

B.A. sued Golabek and the Parsippany defendants on December 21, 2018 in an 11-count complaint, relying on diversity jurisdiction. (D.E. 1.) Relevant to the instant motion are B.A.'s claims against Golabek for sexual battery and violation of the CSAA (*see id.* Count One), and his claims against the Parsippany defendants, standing *in loco parentis*, for sexual abuse and violation of the CSAA (*see id.* Count Two).

#### a. The Original Motion to Dismiss

The Parsippany defendants initially moved to dismiss pursuant to Rule 12(b)(6) on March 6, 2019, and Golabek joined in support of the motion.[1] (*See* D.E. 9.) Defendants primarily argued that the complaint is devoid of facts demonstrating B.A.'s entitlement to relief, and secondarily that B.A. is time-barred from asserting any claims against the Parsippany defendants under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 *et seq.*, which sets forth a 90-day notice of claim period. (Defs. First Mov. Br., D.E. 9-1.) In opposition, B.A. argued that his pleadings are sufficient to survive a 12(b)(6) motion, and that his claims were timely filed in light of recent amendments to the CSAA and the Tort Claims Act, which extended the statute of limitations for sexual abuse claims and eliminated the tort claim notice requirement (the "2019 amendments").[2] (B.A. First Opp. Br., D.E. 11.)

---

[1] Although Golabek did not submit a brief in support of the Parsippany defendants' motion, Golabek stated during oral argument that she "join[ed] in in support of [the Parsippany defendants'] application." (*See* 3/31/21 Transcript, D.E. 59 at 4:16-17.) Accordingly, the Court refers to "defendants" collectively when discussing the arguments raised in the original motion to dismiss (D.E. 9).

[2] When this first set of briefs was submitted, the 2019 amendments—which are codified at P.L. 2019 c. 120 and P.L. 2019 c. 239—had passed the Senate but were not yet effective.

3

After briefs were filed, both sides obtained permission to supplement the record.  (D.E. 25, 26.) Defendants filed documents in support of their untimeliness arguments demonstrating that B.A. spoke with law enforcement in 2007 about his relationship with Golabek, and B.A. added documents relevant to that issue.  The motion was administratively terminated so the parties could file supplemental briefing specifically addressing "the effect, if any" the 2019 amendments have on this action and defendants' motion to dismiss.  (D.E. 27.)

In his supplemental briefing, B.A. argued that the 2019 amendments impose a two-year "safe harbor" provision, which was designed "to permit all plaintiffs an opportunity to be heard on the merits of the case."  Accordingly, regardless of when B.A. discovered the sexual abuse, his invocation of the two-year safe harbor provision would render his claims timely.  (B.A. Supp. Br., D.E. 28.)  Defendants countered that application of the 2019 amendments to them would "reach[] well-beyond acceptable principles of due process" because B.A. had full knowledge of the impact and circumstances of his relationship with Golabek in the 1970s when he attempted suicide, and, at the latest, in 2007 when he spoke with law enforcement about his relationship with Golabek after being told by a medical professional that he had been victimized.  (Defs. Supp. Br., D.E. 29.)

The Court held oral argument on March 31, 2021 and ruled that B.A. had plausibly pled a cause of action to survive defendants' 12(b)(6) motion.  (3/31/21 Transcript at 37:20-38:2, 40:3-6.)  As to defendants' statute of limitations arguments, the Court directed counsel to file additional briefs on whether "the time sequence of the attempted suicide and the 2007 interaction with law enforcement . . . take this particular litigation out of the two-year safe harbor provision."[3]  (*Id.* 38:20-24.)

    b.  **The Instant Motion to Dismiss**

---

[3]  The Court clarified that B.A.'s 2007 interaction with law enforcement did not appear to be "in dispute."  (*Id.* 38:22-23.)

4

In her moving brief, Golabek argues that that the 2019 amendments, as applied to her, "reach[] well-beyond acceptable principles of due process and the legislative intent" because B.A. was fully aware of his cause of action decades earlier.[4] (Golabek Mov. Br., D.E. 62-2 at 6-7, 10-13.) Because B.A.'s lawsuit was filed before the 2019 amendments became effective, Golabek invokes the entire controversy doctrine, *res judicata*, and collateral estoppel. (*Id.* at 8-10.) The Parsippany defendants join in her arguments and emphasize that the 2019 amendments were designed to "provid[e] the victims of childhood abuse with the opportunity to litigate *sublimated claims*," not claims such as B.A.'s that were known to the victim decades prior. (Parsippany Mov. Br., D.E. 64 at 1 (emphasis added).)

In opposition, B.A. argues that the 2019 amendments resulted in a "massive, retroactive revision of the statute of limitation applicable to cases sounding in sexual abuse" and created a two-year "open window" during which "*anyone who was ever sexually abused* in New Jersey" could file suit. (Opp. Br., D.E. 69 at 12 (emphasis added).) B.A. further contends that because the 2019 amendments are "expressly applicable" to actions like this one, which was filed prior to the effective date of the 2019 amendments, his claims are timely and defendants' motion to dismiss must be denied. (*Id.* at 13-14.)

In reply, defendants further contend that there was nothing criminal about the relationship between B.A. and Golabek under the laws in place at the time of their relationship because the legal age of consent in New Jersey for a male was 16 years old. Accordingly, defendants argue that the complaint should be dismissed because its allegations do not meet the definition of "sexual abuse." (*See generally* Defs. Reply Brs., D.E. 70, 71.)

## III.  Discussion

---

[4] Consistent with the Court's instruction during oral argument to address the "the 2007 interaction with law enforcement" and its impact on the statute of limitations (3/31/2021 Transcript at 38:20-24), counsel filed a declaration attaching documentation relating to the 2007 law enforcement interaction. (Mazawey Decl., D.E. 62-1 at Ex. B.)

### A. Standard of Review

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true all allegations in the complaint, as well as all reasonable inferences that can be drawn therefrom. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations in the complaint must be viewed in the light most favorable to the plaintiff. *See Phillips v. County of Alleghany*, 515 F.3d 224, 231 (3d Cir. 2008). To survive a motion to dismiss, a plaintiff must "plead more than the possibility of relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The Court will "disregard legal conclusions and 'recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

Where "matters outside the pleadings are presented to and not excluded by the court," the motion generally "must be treated as one for summary judgment." Fed. R. Civ. Pro. 12(d). However, the Court may rely on documents that are "integral to or explicitly relied upon in the complaint" without converting the motion to dismiss into a motion for summary judgment. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425-26 (3d Cir. 1997) (internal citations and quotations omitted); *see also Moore v. Beers*, 121 F. Supp. 3d 425, 430 (D.N.J. 2015) (holding that a court "reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice," except where there is "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document") (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). Here, the Court will consider the transcript submitted by Golabek regarding B.A.'s 2007 interaction with law enforcement (Mazawey Decl. at Ex. B) as the parties have not disputed its authenticity, and it is integral to the timeline of events presented in the complaint.

6

### B. The 2019 Amendments

The Court begins its analysis with a discussion of the 2019 amendments and their impact on the CSAA and the Tort Claims Act.

By way of background, in 1992 the New Jersey legislature established a statutory civil action for sexual abuse in the CSAA. The CSAA defines "sexual abuse" as "an act of sexual contact or sexual penetration between a child under the age of 18 years and an adult," and further provides that "[a] parent, resource family parent, guardian or other person standing in loco parentis who knowingly permits or acquiesces in sexual abuse by any other person also commits sexual abuse." N.J.S.A. 2A:61B-1(a)(1). A cause of action under the CSAA accrues "at the time of reasonable discovery of the injury and its causal relationship to the act of sexual abuse." N.J.S.A. 2A:61B-1(b).

Prior to the 2019 amendments, child sexual abuse victims were subject to a two-year statute of limitations, which could only be tolled under certain conditions. *See, e.g.*, *Doe v. Archdiocese of Philadelphia*, 2021 WL 796142, at *2 (E.D. Pa. Mar. 2, 2021). On December 1, 2019, the effective date of the 2019 amendments, the legislature extended the statute of limitations set forth in the CSAA as follows:

> Every action at law for an injury resulting from the commission of sexual assault, any other crime of a sexual nature, . . . or sexual abuse as defined in [the CSAA] against a minor under the age of 18 that occurred prior to, on or after the effective date of [the 2019 amendments] *shall be commenced within 37 years after the minor reaches the age of majority, or within seven years from the date of reasonable discovery of the injury and its causal relationship to the act, whichever date is later*.

N.J.S.A. 2A:14-2a(a)(1) (emphasis added).

The 2019 amendments also provided relief for child sexual abuse victims whose claims would still be untimely by instituting a two-year "open window" period. *See* S. Rep. No. 477 at 1 (Mar. 7, 2019) (recognizing that the 2019 amendments "would extend the statute of limitations in civil actions

7

for sexual abuse claims, as well as create a two-year window for parties to bring previously time-barred actions based on sexual abuse"). More specifically, N.J.S.A. 2A:14-2b(a) provides that:

> *Notwithstanding the statute of limitations provisions of [N.J.S.A. 2A:14-2a] . . .*, an action at law for an injury resulting from the commission of sexual assault, any other crime of a sexual nature, . . . or sexual abuse as defined in [the CSAA] that occurred prior to the effective date of the [2019 amendments], *and which action would otherwise be barred through application of the statute of limitations, may be commenced within two years immediately following the effective date.*

N.J.S.A. 2A:14-2b(a) (emphases added).

The 2019 amendments also impacted the Tort Claims Act in several respects. Importantly, the 2019 amendments clarified that immunity from civil liability granted to a public entity or employee by the Tort Claims Act "shall not apply to an action at law for damages as a result of a sexual assault, any other crime of a sexual nature, . . . or sexual abuse as defined in [the CSAA]." N.J.S.A 59:2-1.3(a)(1). Pursuant to the 2019 amendments, the extended statute of limitations set forth in the CSAA—including the two-year "open window" period—applies with equal force to child sexual abuse claims against public entities or employees.[5] *See* N.J.S.A. 59:2-1.3(b).

### C. The Timeliness of B.A.'s Claims

#### a. Public Policy Considerations

Defendants do not appear to dispute that B.A.'s claims are timely under the plain language of the 2019 amendments. Instead, they argue that the Court may "disregard" the statute of limitations imposed by the 2019 amendments because it counteracts public policy concerning child sexual

---

[5] The 2019 amendments to the Tort Claims Act further clarified that the extended statute of limitations applies to "any cause of action filed prior to th[e] effective date" of the 2019 amendments, so long as the matter "has not yet been finally adjudicated or dismissed by a court as of that effective date." *See* P.L. 2019, c. 239, § 2. Although no comparable language is included in the 2019 amendments to the CSAA, the parties do not appear to dispute that "the statutory scheme requires that the entirety of the 2019 [a]mendments be applied to pending cases." (Opp. Br. at 13; *see also* Golabek Mov. Br. at 6.)

abuse causes of action, apparently relying on the Supreme Court's directive in *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975) and various state court cases. More specifically, defendants contend that at "its heart," the 2019 amendments have "the salutary purpose of providing the victims of childhood abuse with the opportunity to litigate sublimated claims," but B.A. was "fully aware of any alleged assault" more than a decade before he commenced the instant action, and thus the Court should disregard the extended statute of limitations.[6] (Golabek Mov. Br. at 6-7; Parsippany Mov. Br. at 1.)

In *Johnson*, the Supreme Court addressed the propriety of "borrowing a state period of limitation for application to a federal cause of action" where the applicable federal statute did not specify a limitation period. 421 U.S. at 464. The Court explained that state law is its "primary guide in this area," but recognized that "considerations of state law may be displaced where their application would be inconsistent with the federal policy underlying the cause of action under consideration." *Id.* at 465. Here, B.A. pursued his claims under a state statute that clearly sets forth a limitations period applicable to B.A.'s claims. Accordingly, the Court need not "borrow" a limitations period from another statute and has no basis to "displace" the period clearly articulated in the state statute before it.

Defendants cite to a series of state court cases in which, they argue, courts interpreting the CSAA were "not bound by the statute of limitations contained in the statute in cases, like B.A., that did not fall within the policy considerations underlining the Statute." (Golabek Mov. Br. at 10-12; Parsippany Mov. Br. at 1-3.) But in all of those cases, the courts interpreted the statute of

---

[6] In addressing the "salutary purpose" of the 2019 amendments, defendants contend that applicability of the amendments to them would "reach[] well-beyond acceptable principles of due process." (Golabek Mov. Br. at 6; Parsippany Mov. Br. at 1.) The term "due process" is mentioned only then, and so the Court construes defendants' "due process" argument as subsumed in their public policy arguments.

9

limitations equitably in favor of the sexual abuse victims.  In *J.L. v. J.F.*, 317 N.J. Super. 418 (App. Div. 1999), for example, the trial court dismissed the plaintiffs' child sexual abuse claims on statute of limitations grounds, finding that the plaintiffs had known of the sexual abuse since the time it occurred (*i.e.*, 30 years prior) and deliberately chose not to report it.  The appellate division reversed and remanded.  While recognizing that "there are other equitable considerations the trial court must consider," such as the fact that the "complaint was filed approximately thirty years after the applicable two-year-statute-of-limitation period expired," the court reasoned that "should these horrific allegations be true, *it might not be equitable to permit defendant to benefit from a strict adherence to the statute of limitations* in the event the aftermath of his acts did in fact cause plaintiffs' delay in bringing their action."  *Id.* at 436 (emphasis added).

Defendants also cite to *Jones v. Jones*, 242 N.J. Super. 195, 207 (App. Div.), *certif. denied*, 122 N.J. 418 (N.J. 1990), for the proposition that "we in New Jersey have a long history of instances where equity has interposed to bar the statute of limitations."  (Internal citations and quotations omitted.)  Had defendants cited the entirety of the passage from *Jones*, it would have been apparent that equity has barred the limitations period in instances "where some conduct *on the part of the defendant . . .* has rendered *it inequitable that he be allowed to avail himself of the defense*."  *Id.* (emphasis added).  Indeed, as in *J.L.*, the appellate division in *Jones* reversed the trial court's dismissal of the plaintiff's sexual abuse claims on statute of limitations grounds, reasoning that the plaintiff had "raised genuine issues of material fact concerning whether she had the ability and capacity, due to mental affliction allegedly caused by defendants' conduct, to assert her lawful rights."  *Id.* at 205.

Defendants cite *Hardwicke v. Am. Boychoir Sch.*, 368 N.J. Super. 71, 90 (App. Div. 2004), *aff'd as modified*, 188 N.J. 69 (2006), to support their position that "an unswerving, mechanistic application of [the] rules of construction will inflict obvious harm, without materially advancing the [CSAA's]

10

primary objective: to provide civil redress for injuries inflicted on children through sexual abuse." But the appellate division was criticizing the trial court's mechanistic formulation of the CSAA which would allow the defendant-school to escape liability. The court recognized "as having some merit the argument that an institution such as a school that, long ago, addressed the problems of sexual abuse and put proper controls in place should not now be called upon to pay for past transgressions." *Id.* at 106. But it noted as well that "[t]he right of compensation for injuries to persons who in their childhood years were subject to sexual abuse also must be considered." *Id.* Accordingly, the court declined to address on the merits any arguments regarding the statute of limitations, and found it "inappropriate in the present context to deem one consideration more important than another, or to let that consideration guide [its] resolution of the case." *Id.*[7]

Significantly, all of defendants' cited cases preceded the 2019 amendments and the two-year "open-window," and thus were written at a time in which evaluation of the proofs had relevance. The 2019 amendments provide a broad, if temporary, opportunity to file lawsuits that arise under the CSAA without regard to considerations that are discussed therein. *See* N.J.S.A. 2A:14-2b(a) (notwithstanding the limitation period of N.J.S.A. 2A:14-2a, creating two-year "open window" for victim to commence action which "would otherwise be barred through application of the statute of limitations"). Golabek and the Parsippany defendants want the Court to screen what comes through that two-year "open window," and the Court does not believe it has that authority.

Defendants rely on two specific incidents to support their argument that language aside, the amendments should not apply to them: B.A.'s suicide attempt in the 1970s and his interaction with law enforcement in 2007, incidents that are fully described in one of the supplemental documents Golabek

---

[7] Defendants also rely on *Byrd v. Manning*, 253 N.J. Super. 307 (App. Div. 1992), which is inapposite. The court in *Byrd* interpreted the timeliness of claims under 42 U.S.C. § 1982—not the CSAA.

produced. (*See* Mazawey Decl. at Ex. B.) In a transcript of a July 16, 2007 telephone conversation between B.A. and Detective Richard Nicoletti of the Parsippany Police Department, B.A. recites the details of his relationship with Golabek, including how he had a crush on her in his freshman year of high school and gave her a rose, and that they engaged for several months in a non-physical, mutually-flirtatious relationship—which included trips to the movies, the park, and local eateries. After he turned 16 their relationship became sexual; his parents knew about it, he told some of his friends, and although she sought to keep it secret, some of Golabek's peers found out. Golabek became pregnant at some point after B.A. turned 17 and after that, the relationship foundered and she ended it. He described his anguish about this, which culminated in his meeting her in her car and cutting his wrists and her calling his parents who rushed him to the hospital. While the transcript demonstrates that law enforcement told him they were not sure any crime could be charged, B.A. does indicate he was exploring civil remedies. The transcript, therefore, very clearly establishes the extent of B.A.'s knowledge as of 2007.

  That said, the 2019 amendments permit B.A. to pursue civil damages now even though he was in possession of all of the facts of his and Golabek's relationship at the age of 17 and at the age of 47 when he spoke to law enforcement and thought about filing a lawsuit, and regardless of how much time had gone by between the summer before his senior year in high school and when he did file this lawsuit. The Court is unable to find from defendants' briefing any authority that would advance their "due process" argument. And the public policy articulated in the cited cases overwhelmingly favors preserving the claims in the face of a statute of limitations—where courts have bent it, the lean is toward the plaintiffs. The 2019 amendments could not be clearer: they provide that the specific events and the circumstances of his and Golabek's relationship may be litigated without regard to how soon he took

action as long as he filed between December 1, 2019[8] and December 1, 2021, when the window closes. Put another way, defendants do not have a "legal defense" in the statute of limitations that stops the action cold; the significance of the facts adduced to date and how they bear on the merits all await the next steps in this litigation.

Accordingly, the Court finds no basis to dismiss B.A.'s claims on statute of limitations grounds.

### b.  Entire Controversy Doctrine, *Res Judicata*, and Collateral Estoppel

The Court briefly addresses defendants' next argument that B.A. is barred from pursuing his sexual abuse claims under the entire controversy doctrine, *res judicata*, and collateral estoppel. Defendants' argument is premised on the fact that B.A.'s claims were filed in December 2018— approximately one year before the 2019 amendments became effective—and thus B.A. should be barred from effectively "refiling this action under the new law."  (Golabek Mov. Br. at 7-10.)

Defendants' argument is misguided.  The entire controversy doctrine, *res judicata*, and collateral estoppel are equitable bars against parties relitigating certain claims or issues in a subsequent litigation that have already been adjudicated in a prior proceeding.  *See, e.g.*, *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 (3d Cir. 1999) (the entire controversy doctrine "requires adversaries to join all possible claims stemming from an event or series of events in one suit," and was developed to preclude suits "based on disputes that were previously the subject of litigation"); *see also Wood v. Garden State Paper Co.*, 577 F. Supp. 632, 634 (D.N.J. 1983) (the doctrine of *res judicata* "bars a party from relitigating a second time what was previously fairly litigated and determined finally," and collateral estoppel "bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action" (internal citations and

---

[8] The complaint was filed on December 21, 2018, before the two-year window began.  *See* discussion, *infra*.

quotations omitted)).  Here, B.A.'s claims and the specific issues underlying them have not been litigated in a prior proceeding.  Accordingly, defendants' motion to dismiss on the grounds that B.A. is equitably barred is denied.

### D. The Lawfulness of Defendants' Conduct

Defendants have argued that B.A.'s claims should be dismissed because the legal age of consent in New Jersey for a male was 16 when B.A. and Golabek began their sexual relationship, thus her conduct was not unlawful and by extension, there is no liability on the part of the Parsippany defendants. (Golabek Mov. Br. at 10; *see generally* Defs. Reply Brs.)  In opposition, B.A. primarily argues that the 2019 amendments "focus on the current state of the law and contain no requirement that a defendant's acts be criminal at the time they were committed."  (Opp. Br. at 16.)  Whether Golabek's conduct was criminal, the impact of the change in the age of consent, and what constitutes lawful or unlawful conduct seen through the lens of the 1970s and the 21st century are all issues whose relevance and merits are appropriately decided after discovery and further motion practice and even trial.  It would be highly inappropriate for the Court to make findings on them now and this argument fails as a reason to dismiss.

* * *

Because the Court's ruling turns on the applicability of the 2019 amendments, one point requires clarification: whether defendants still maintain B.A. needs to refile the instant lawsuit before the two-year "open window" expires on December 1, 2021.  Defendants appear to concede that B.A. does not, because this case was pending when the 2019 amendments became effective.  (*See* Golabek Reply Br. at 7 (recognizing "legislative intent to allow pending cases filed prior to December 1, 2019 to be treated as though filed within the two-year 'open window' period").)  To put to rest whether this is an open issue, and if so, the necessary next steps, the parties are directed to arrange a joint teleconference promptly with Magistrate Judge Waldor.

## IV.  Conclusion

For the foregoing reasons, defendants' motion to dismiss (D.E. 62) is denied.  An appropriate order will issue.

Date: November 8, 2021

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.